UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TAME ARNOLD, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MAXIMUS, INC., | ) |
|  | ) |
|     Defendant. | ) |

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff Tame Arnold complains against Defendant Maximus, Inc., and demands a trial by jury as follows:

**PARTIES, JURISDICTION, and VENUE**

1. Plaintiff Tame Arnold ("Ms. Arnold" or "Plaintiff") resides in Westbrook, Cumberland County, Maine.

2. Maximus, Inc. ("Maximus" or "Defendant") is a Virginia business corporation registered with the Maine Secretary of State to do business in Maine.

3. Jurisdiction is proper under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

4. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(h) of the Rules of this Court, this action should be tried in Portland because Plaintiff resides in Cumberland County and because she was employed in Cumberland County when the events at issue occurred.

5. With respect to Plaintiff's claims under the Maine Whistleblowers' Protection Act ("MWPA") and Maine Human Rights Act ("MHRA"), Plaintiff has exhausted all administrative remedies and otherwise met all conditions precedent before commencing suit, including filing a timely Administrative Complaint with Maine Human Rights Commission ("MHRC").

6. On October 25, 2025, MHRC Commissioners found reasonable grounds to believe that Defendant subjected Plaintiff to unlawful retaliation in violation of the MHRA and MWPA.

7. On January 25, 2026, the Commission issued a Notice of Right to Sue to confirm that that Plaintiff retained the right to file a civil action under the MHRA within two years after the latter of the last act of discrimination or 90 days from January 25, 2026.

## FACTUAL ALLEGATIONS

8. Ms. Arnold was employed by Maximus as a Clinical Assessment Coordinator from December 2022 to August 2023. Maximus terminated Plaintiff's employment on August 9, 2023.

9. Maximus provides clients with various clinical assessment services.

10. During Ms. Arnold's employment at Maximus, Maximus entered into one or more service contracts with the State of Maine Department of Health and Human Services ("Maine DHHS") to provide various assessment services, primarily related to long-term care and disability support programs.

11. Maine DHHS selected Maximus as a vendor to conduct assessments using a certain standardized assessment tool (the "Assessment").

12. The Assessment was designed by the American Association of Intellectual and Developmental Disabilities (AAIDD), a professional third-party advocacy agency, to determine the appropriate daily support that a person with intellectual and developmental disabilities needs to live independently.

13. Ms. Arnold's primary job duties included administering the Assessment to adults with intellectual disabilities, adults with autism, and waitlisted individuals under a "waiver" of certain Maine DHHS rules or regulations for home and community-based support.

14. Following her training, Ms. Arnold completed several Assessments. She received feedback from the Maximus Quality Analysis team that her Assessment scores were deemed "too high." Ms. Arnold received additional training on the Assessment, and she believed that her scoring Assessments were accurate.

15. In March of 2023, Maximus laid off 50% of its employees working on the Maine DHHS contract. Ms. Arnold was not among those laid off.

16. Maximus assigned Ms. Arnold to complete additional training on conducting Quality Assurance reviews.

17. Following this training, Ms. Arnold became very concerned that Maximus's instructions for implementing the Assessment were incorrect under AAIDD's Assessment standards, and that Maximus manipulated and falsified the results to the detriment of the recipients of disability support services.

18. Ms. Arnold believed that Maximus's false and fraudulent practices directly and proximately resulted in recipients receiving less support from Maine DHHS than they needed, less than they were entitled to by law, and that the lack of support placed the health and safety of these recipients at risk.

19. Ms. Arnold knew, and complained to Maximus, that Maximus failed to adhere to AAIDD's Assessment standards, which required a respondent (case manager, parent, etc.) to spend several hours with a client across multiple different encounters and settings. Ms. Arnold knew that many respondents were spending one hour or less with a client prior to Maximus signing off on a service plan.

20. Ms. Arnold reported her concerns to the Maximus clinical team. On April 3, 2023, she sent an email to a Maximus manager stating:

> "[Third Party] requires that [the Clinical Case Manager, or "CCM] must have had recent opportunities to observe the person in one or more environments for substantial periods (at least several hours per setting). Directly under in the green box on the Maximus workplan [it] states: "have had recent opportunity to in the past three months to interact with the person." I want to clarify how many hours "substantial periods/several hours per setting" correlates to. I have been conducting Maine assessments where the case managers have only known the individual for three months or have spent less than one total hour with the family. Each CCM I have met with has stated 0-5 contact hours in three months, and have confirmed they do monthly check-ins that are brief in nature (30 minutes or less, and that the individual is often times not present during these check ins.) I have continuously felt that the CCM's do not meet the criteria and have only had one other respondent available who is usually a parent."

21. In response to Ms. Arnold's reported concerns Maximus explained to Ms. Arnold that Maximus's implementation process was "not ideal" but that "we have not split hairs too much" because of the logistics.

4

22. On June 21, 2023, Ms. Arnold emailed Maximus's CEO to complain that a certain Maximus Associate Project Manager and another supervisor retaliated against her because she had filed an ethics complaint against them.

23. A week after learning about Ms. Arnold's email to the CEO, the supervisor about whom Ms. Arnold complained filed a baseless internal complaint against Ms. Arnold. Maximus investigated the supervisor's complaint and took no action regarding either complaint.

24. On June 25, 2023, Maximus provided Ms. Arnold with a merit raise.

25. Ms. Arnold discovered that Maximus changed some of her Assessment scores without her knowledge and orally complained to Maximus about this. For example, Ms. Arnold scored one particular individual as needing 24-hour support due to concerns about elopement and other safety issues. Ms. Arnold later found out that Maximus downgraded her recommendation to two hours a day, six days per week (creating obvious safety issues for the recipient).

26. On July 20, 2023, Maximus's Senior Vice President, another Maximus Manager, and Ms. Arnold participated in a video call to discuss some of Ms. Arnold's operational and safety concerns. The call became hostile, and Ms. Arnold's concerns were dismissed and/or grossly minimized.

27. Ms. Arnold remained very concerned about what she perceived as Maximus's practice of inappropriately lowering Assessment scores in order to save Maine DHHS money, thereby increasing its likelihood of Maximus maintaining its contract with Maine DHHS.

28. On July 31, 2023, Ms. Arnold received an email from her manager explaining that one of her Assessment performance scores was lowered to 90% because she rated someone as needing more support than Maximus deemed necessary. Maximus made this determination despite the fact that it possessed far less information than Ms. Arnold about this specific individual.

29. The baseless downgrading of Ms. Arnold's Assessment scores created tangible health and safety risks for vulnerable individuals with disabilities.

30. On August 9, 2023, a Maximus human resources Vice President VP wrote to Ms. Arnold, stating:

> "not unsimilar [sic] to the call on July 20, 2023, I have witnessed argumentative, combative and insubordinate behavior from you on various occasions. Unfortunately, it appears that you disagree with nearly every response or resolution Maximus has offered. Your conduct and behavior does not foster a productive working relationship and does not align with Maximus' values of collaboration and respect."

31. On August 9, 2023, Maximus terminated Ms. Arnold's employment.

32. Notwithstanding Maximus's abrupt and unwarranted termination of Ms. Arnold's employment on August 9, 2023, Maximus provided Ms. Arnold with three extremely positive performance evaluations, and, as recently as May 30, 2023, wrote to "commend [her] for continuing to do a great job and recognized [her] efforts and commitment to quality."

### COUNT I
### 26 M.R.S. § 833 and 5 M.R.S § 4633
### Retaliation

33. Plaintiff repeats the allegations contained in Paragraphs 1 through 32.

34. Plaintiff engaged in activity protected under the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831-840 ("MWPA"); to wit, acting in good faith, she reported to her employer what she had reasonable cause to believe were violations of state or federal laws, rules, or regulations and/or conditions or practices that put at risk the health or safety of Plaintiff, and others, namely, recipients of Maine DHHS benefits as set forth above.

35. Plaintiff engaged in activity protected under the Maine Human Rights Act, 5 M.R.S. § 4633 ("MHRA); to wit: acting in good faith, she opposed her employer's unlawful acts or practices and complained and reported to her employer about such unlawful acts or practices.

36. In response to Defendant's reports and complaints, Defendant retaliated against Plaintiff, intimidated or coerced Plaintiff, or threatened or interfered with her exercise or enjoyment of her civil rights.

37. Defendant subjected Plaintiff to adverse employment action, to wit: interference, retaliation, intimidation and coercion with respect to the terms or conditions of her employment; created hostile working conditions; and wrongfully terminated her employment, all because Plaintiff made such reports and complaints, all in violation of the MHRA and MWPA.

38. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MWPA and MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from August 9, 2023, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

Dated:  February 27, 2026                 */s/ James A. Clifford*
                                          James A. Clifford
                                          james@cliffordclifford.com

                                          */s/ Andrew. P. Cotter*
                                          Andrew P. Cotter
                                          andrew@cliffordclifford.com

                                          CLIFFORD & CLIFFORD, LLC
                                          10 Moulton Street, 5th Floor
                                          Portland, ME 04101
                                          (207) 613-9465

                                          Attorneys for Plaintiff